In the Matter of Catherine B. COX.

No. 53S00–9409–DI–882.

Supreme Court of Indiana.

March 12, 1996.

Catherine B. Cox, Bloomington, pro se.

Donald R. Lundberg, Robert C. Shook, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The Disciplinary Commission has charged the respondent with violating the *Rules of Professional Conduct for Attorneys at Law* in a six-count *Verified Complaint for Disciplinary Action.* This matter now comes before this Court on the parties' *Statement of Circumstances and Conditional Agreement for Discipline,* entered pursuant to Ind.Admission and Discipline Rule 23, Section 11(g).[1] We find that the agreement should be approved, and herein set forth the facts and circumstances of this case.

The respondent was admitted to the bar of this state in 1980. Pursuant to Count I of the verified complaint, the parties agree that on May 13, 1993, a client retained the respondent to seek child support from his ex-wife, paying the respondent $315 for anticipated services. Thereafter, the client was unable to contact the respondent by telephone. On August 10, 1993, the respondent contacted the client, providing him with a copy of a petition to modify and order to appear which she had filed on his behalf on August 6, 1993. She appeared in court on his behalf on September 16, 1993 and achieved modification of support payments to his satisfaction.

We now find that by her conduct in Count I, the respondent violated Ind.Professional Conduct Rules 1.3, 1.4(a), and 1.4(b).[2]

Under Count II, the parties agree that a client retained the respondent on August 17,

---

1. Indiana Admission and Discipline Rule 23 was amended, effective February 1, 1996. Former subsection 11(g) is now subsection 11(c).

2. Professional Conduct Rule 1.3 provides:

   A lawyer shall act with reasonable diligence and promptness in representing a client.

   Professional Conduct Rule 1.4 provides:

   (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

1992 to handle a foreclosure action on property owned by the client's mother. The respondent accepted from the client $1,000 toward a total agreed fee of $2,500. The client expressed to the respondent concern about the matter's urgency, as foreclosure proceedings were instituted to satisfy medical obligations of the client's mother.

On November 19, 1992, the respondent and the client appeared in court for a summary judgment proceeding and obtained a judgment of approximately $19,000. The court ordered the property sold at a sheriff's auction, initially scheduled for February, 1993. Although public notices for auctions scheduled for February were required to be filed by January 4, 1993, the respondent did not file the notices until February 19, 1993. The date of the auction was apparently later rescheduled for March 31, 1993. The client attempted to contact the respondent throughout January and February, 1993, to learn the status of the pending sale, but was unable to reach her. Prior to the auction, the respondent received an offer to purchase the property for approximately $15,000. She failed to convey the offer to her client and later rejected it. She advised her client that she would be attending the sheriff's auction to ensure that an adequate sale price on the property was obtained. Despite being advised by the civil sheriff's clerk to appear at the auction to protect her client's interests, the respondent failed to attend, and the property was purchased that day for $6,000. For approximately two weeks following the sale, the client was unable to reach the respondent to learn of the events that had unfolded. On April 12, 1993, the respondent returned one of the client's telephone calls, advising her of the property's sale price. The client requested that the respondent forward to her all information and money from the sale so that the client could prepare the filings necessary to secure Medicaid for her mother. Thereafter, the respondent failed to forward the requested materials and ceased all communications with the client.

We find that, by her conduct in Count II, the respondent violated Prof.Cond.R. 1.3 and 1.4. Further, she violated Prof.Cond.R. 1.1 by failing to provide competent representation to her client.

Under Count III, the parties agree that a client retained the respondent in August, 1992, to file a petition for dissolution and to seek a restraining order against the client's husband. The client paid a retainer of $250 toward an agreed total fee of $500. On September 3, 1992, the respondent filed a petition for dissolution and restraining order, but failed to take any further action until twenty days after receiving the court's notice of intent to dismiss the case for failure to prosecute it, pursuant to Ind.Trial Rule 41(E). On November 24, 1993, the respondent filed a motion to set a hearing on February 1, 1994. Between August, 1992, and January, 1994, the client repeatedly tried to contact the respondent, without success. On February 1, 1994, the respondent appeared with the client at a final hearing in the dissolution proceeding. The court ordered the respondent to prepare a final dissolution decree and submit it for court approval. She failed to submit a decree to the court, but informed the client on April 6, 1994, that she had finalized the decree. After the April 6 conversation, the client was unable to contact the respondent. The client retained another attorney on May 23, 1994, to submit a proposed final decree.

We now find that under Count III, the respondent violated Prof.Cond.R. 1.3 and 1.4. By informing her client that she had finalized the final decree when in fact she had not, the respondent violated Prof.Cond.R. 8.4(c).[3]

The respondent and the Commission agree that, pursuant to Count IV, in March, 1991, a client retained the respondent to file a dissolution action. The respondent filed the dissolution action on April 2, 1991. On May 13, 1991, the court issued an order, *pendente lite,* awarding the client $70 in weekly child support. The client's estranged husband failed to comply with the order. Between May, 1991, and July 23, 1991, the client attempted

---

**3.** Professional Conduct Rule 8.4(c) provides:
   It is professional misconduct for a lawyer to:
   . . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

to reach the respondent numerous times without success. The respondent filed a petition for contempt against the husband on July 23, 1991, seeking enforcement of a restraining order filed against him. Hearing was set for August 19, 1991. Although the respondent appeared at the hearing, she failed to pursue an arrearage in child support, despite the client's requests that she do so.

On March 6, 1992, the court dismissed the client's dissolution action pursuant to T.R. 41(E). The respondent had failed to pursue the dissolution after filing a financial declaration on behalf of her client on October 8, 1991. Her motion to reinstitute the proceeding, filed May 27, 1992, was denied by the court the next day. She thereafter failed to communicate with her client until June 5, 1992, at which time she informed her that the dissolution proceeding had been refiled under a new cause number. The respondent denied any knowledge of the reasons for the previous action's dismissal and again refused the client's request to pursue the child support arrearage. The respondent later managed to secure a change of judge, resulting in redocketing of the case. On August 14, 1993, the court issued a *pendente lite* order awarding the client $80 per week in child support. The respondent again refused to seek payment of the outstanding child support arrearage.

Between July, 1992, and December 2, 1992, the client was unable to reach the respondent. After final hearing of the matter on December 2, 1992, the client was unable to contact the respondent concerning the ultimate disposition of the case.

Pursuant to Count IV, we now find that respondent violated Prof.Cond.R. 1.3 and 1.4. By refusing to pursue the issue of the child support arrearage, despite repeated requests by her client that she do so, the respondent violated Prof.Cond.R. 1.2(a).[4]

Pursuant to Count V, it is agreed that on July 23, 1992, a client retained the respondent as successor counsel in a dissolution action and a custody action. After the respondent entered an appearance on July 30, 1992, the client was unable to contact her to learn the status of the matters. The respondent appeared at the final hearing of the dissolution on December 1, 1993, at which time the court issued a final order awarding custody of the children to the client's husband and ordering the client to pay child support in the amount of $78 per week. The client was unable to learn from the respondent the final outcome of the dissolution, despite numerous attempts, both by mail and telephone, to contact her. Because of the lack of information, the client eventually became approximately seven weeks delinquent in child support payments.

Under Count V, we now find that the respondent violated Prof.Cond.R. 1.4.

Under Count VI, the parties agree that a client retained the respondent on November 23, 1992, to pursue modification of child support, to collect a child support arrearage, and to file a wage assignment against the client's ex-husband for payment of child support. The client paid $285 for the contemplated services. Numerous subsequent attempts by the client to reach the respondent went unheeded. The respondent's secretary returned one of the client's telephone calls on January 11, 1993, to inform her that the respondent had been involved in an automobile accident. In February, 1993, the respondent met with the client in order to have a petition for modification signed. The petition called for a hearing to be set on February 26, 1993. The respondent filed the petition on February 11, 1993. At the hearing, the parties agreed to increase child support payments to $80 per week and to make such payments by wage assignment, that all child support arrearages would be paid by July 15, 1993, and that the husband would pay the client's attorney fees. The court approved the agreement, which the respondent had prepared, that day. The respondent failed to file a wage assignment order until May 14, 1993. The client was unable to learn from

---

4. Professional Conduct Rule 1.2(a) provides, in relevant part:

    A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means by which they are to be pursued.

the respondent whether the wage assignment order had been submitted. Between March, 1993, and May, 1993, the respondent returned only one of the client's telephone calls. During that conversation, she misinformed the client that the court would draft its own wage assignment order.

By her conduct in Count VI, the respondent violated Prof.Cond.R. 1.3 and 1.4.

In their agreement, the respondent and the Commission agree that a twelve month suspension from the practice of law is an appropriate discipline for the misconduct which occurred. In assessing the appropriateness of sanction, this Court looks at several factors, including the nature of the misconduct, the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct, the duty of this Court to protect the integrity of the profession, the potential risk to the public in permitting the respondent to continue in the profession, and the existence of aggravating or extenuating circumstances. *In re Cawley*, 602 N.E.2d 1022 (Ind.1992).

Overall, the respondent's course of conduct reveals a disturbing pattern of neglect. She consistently failed to communicate with clients about the matters she was retained pursue, and in several instances took only rudimentary steps toward realizing her clients' objectives. Her recurrent failures to adequately communicate with her clients and to zealously protect their interests caused them great inconvenience and, in two instances, threatened at least temporary loss of avenues of legal redress. Thus, we conclude that the respondent presents a risk to the public and the profession and that it is appropriate to remove her from the practice of law until such time as she can demonstrate her fitness for readmission. We therefore approve the tendered agreement and the parties' agreed sanction of a twelve month suspension.

It is, therefore, ordered that the respondent, Catherine B. Cox, be suspended from the practice of law for a period of not less than twelve (12) months, beginning April 19, 1996. At the conclusion of such period of suspension, the respondent will be eligible to petition this Court for readmission to the practice of law, provided she meets the requirements contained in Admis.Disc.R. 23(4).

Costs of this proceeding are assessed against the respondent.