In the Matter of Jack R. RIDDLE.

No. 13S00–9704–DI–255.

Supreme Court of Indiana.

Oct. 27, 1998.

James H. Voyles, Mark C. Webb, Symmes Voyles Zahn Paul & Hogan, Indianapolis, for Respondent.

Donald R. Lundberg, Executive Secretary, Seth Pruden, Greg Anderson, Staff Attys., Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

Today we find that the respondent, the duly-elected prosecutor of Crawford County, Indiana, engaged in acts constituting ghost employment by hiring a lawyer as chief deputy prosecuting attorney of that county, assigning no prosecutorial duties or responsibilities to that person, and using the state statutory salary for that position to compensate that person for working in the respondent's private law office. As such, the conduct violated the *Rules of Professional Conduct for Attorneys at Law* and warrants the respondent's disbarment.

This disciplinary action commenced with the Disciplinary Commission's *Verified* Complaint for Disciplinary Action, filed April 15, 1997. Specifically, the complaint alleged as follows:

1. That the respondent violated Ind.Professional Conduct Rule 8.4(b) by committing a criminal act, ghost employment, that reflects adversely on his honesty, trustworthiness, and fitness as a lawyer;

2. That he violated Prof.Cond.R. 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit and misrepresentation;

3. That he violated Prof.Cond.R. 8.1(a) by knowingly making false statements of material fact to the Commission during its investigation of this matter;

4. That he violated Prof.Cond.R. 1.5(e) by dividing fees with a lawyer while he was the duly-elected full-time prosecutor of Crawford County; and

5. That he violated Prof.Cond.R. 7.2(b) by allowing his name to remain in the name of a law firm and to be used in the professional notices of or public communications by the firm during a significant period when he was not actively and regularly practicing law as a member of the firm.

Contemporaneously with its *Verified Complaint*, the Commission filed a request for suspension pending prosecution of this matter,[1] which was heard by the hearing officer and upon which the hearing officer recommended that the respondent be suspended *pendente lite*. This Court suspended the respondent *pendente lite*, effective March 13, 1998, and overruled the respondent's objections to such suspension on June 12, 1998.[2] The hearing officer has now submitted her final report on the merits to this Court. Therein, she concluded that the respondent engaged in misconduct as charged. Neither party has petitioned this Court for review of that report. Where that is the case, we accept and adopt the factual findings contained therein, reserving final judgment as to misconduct and sanction.

We now find that the respondent was admitted to the bar of this state in 1974. He was elected as part-time prosecuting attorney of Crawford County, Indiana, in the general election of November 1994, and took office on January 1, 1995. Between that date and December 31, 1995, the respondent served as part-time prosecuting attorney and was paid at an annual rate of $52,500 for those services. At the same time, he maintained a private law practice as a sole practitioner under the name "Jack L. Riddle, Attorney-at-Law," with an office in the town of Marengo in Crawford County. He represented various area banks and mortgage financing institutions in rendering title opinions and other related real estate work. He generally charged a flat rate of $100 for title opinions, plus fees for the preparation of deeds, mortgages, and other ancillary real estate documents. He continued to operate his private law office while serving as part-time prosecuting attorney.

Sometime during 1995, the respondent met attorney John Evans, who was acting as opposing counsel in a private case which the respondent handled on behalf of a client. In November 1995, the respondent and Evans began a series of discussions concerning the possibility of Evans working for the respondent, including the possibility of Evans working in the respondent's private law practice and being appointed as chief deputy prosecuting attorney for Crawford County, a position for which the compensation is provided by the state pursuant to statutory authority. In late December 1995, the respondent orally offered Evans the position of chief deputy prosecuting attorney of Crawford County and a position working in the respondent's private law office in Marengo. On December 29, 1995, the respondent submitted to the office of the Division of State Court Administration[3] notice that he had elected to become a full-time prosecuting attorney pursuant to I.C. 33–14–7–19.5, beginning January 1, 1996. Pursuant to statute in effect at that time, upon the effective date of such election the respondent became entitled to a state-paid statutory salary of $85,000 per year. As a condition of electing full-time status, the respondent was required to devote his full professional time to the prosecuting attorney's office and was not permitted to engage in the private practice of law. I.C. 33–14–7–19.5(b). On January 8, 1996, the respondent and Evans consummated their employment agreement of December 1995, and on that day Evans began working in the respondent's private law office. The respondent testified that he was not engaged in the private practice of law after Evans began his duties in the office. Evans testified that he and the respondent agreed to form a partnership, with Evans representing the respondent's former clients. They caused to be prepared

1. Ind.Admission and Discipline Rule 23(11.1)(b).

2. The respondent's suspension from the practice of law in this state necessarily made him ineligible to continue to perform the duties of prosecuting attorney of Crawford County. Accordingly, by order issued March 6, 1998, this Court suspended him from office without pay, effective March 13, 1998, and appointed a temporary prosecuting attorney for Crawford County.

3. The Indiana Supreme Court Division of State Court Administration administers payroll for many state judicial officials, including elected prosecuting attorneys and appointed chief deputy prosecuting attorneys. Indiana Administrative Rule 5(C) requires prosecuting attorneys to notify State Court Administration of commencement of their terms of office and the commencement and termination of employment of deputy prosecuting attorneys in their offices whose salaries are administered through the office of State Court Administration.

new letterhead, which read "Riddle Law Office," and which eventually listed both the respondent and Evans as members, with the words "on leave" in parentheses by the respondent's name. On January 9, 1996, the respondent opened two bank accounts for the partnership—an operating account and a trust account. Each account could be accessed by the respondent and Evans. The respondent deposited $1,000 and $250, respectively, into the accounts. Although the respondent characterized the deposits as "loans" to Evans, Evans testified that he was not consulted by the respondent about the deposits (except to sign the signature card) and was never asked about contributing any money to the initial deposits. The initial deposits were designated as contributions to the capitalization of the new law partnership on the partnership tax return prepared by Evans at the end of 1996. The respondent also continued to maintain another checking account designated as one for his law practice.

On January 8, 1996, the respondent appointed Evans as chief deputy prosecuting attorney of Crawford County. Such appointment was made in written form and the respondent administered an oath of office to Evans, which Evans signed that day. No one else witnessed Evans taking the oath. The respondent then notified State Court Administration of Evans' appointment, submitting as a record the January 8, 1996 oath of office.[4]

After Evans assumed the day-to-day responsibilities of the Riddle Law Office, the practice remained as it had been before the respondent became a full-time prosecuting attorney. The physical office remained essentially identical. The respondent's secretary remained, as did most of the clients. The respondent retained a key so that he could access the office in Evans' absence. Billing statements were issued under the heading "Riddle Law Office." Evans reviewed, prepared, and signed title opinions and other legal documents as the respondent had previously done. The respondent contacted none of his clients to let them know he

was no longer their attorney. He testified, however, that Evans practiced as a "sole practitioner." Pursuant to oral agreement, Evans was to receive fees from ancillary legal work, such as the preparation of deeds and mortgages. The respondent specifically instructed Evans that the payments from clients for title work and other real estate billings were not to be deposited in the firm's accounts. Instead, the checks made in payment by clients were to be kept in a desk drawer until a sufficient number had been accumulated. The respondent and Evans then divided the checks between them. The respondent received the fees for title opinions. Evans received the fees for ancillary legal work. Evans paid the firm's expenses out of the fees he received. The respondent deposited the fees agreed to be his into his own law office account. The sum total of deposits made by the respondent into his account totaled $34,616.27 for 1996.

Shortly after Evans began work at the Riddle Law Office, a local newspaper reporter interviewed Evans and the respondent about Evans coming to the county as a new lawyer. The resulting February 1996 newspaper article spoke of Evans working "for" the respondent, but did not mention the fact that he had been appointed as chief deputy prosecuting attorney. The reporter even asked the respondent if Evans had been or would be appointed as deputy prosecutor. The respondent replied that Evans had not, but that if he was appointed the reporter would be the first to know.

On August 5, 1996, the respondent contacted Judge Kenneth Lopp of the Crawford Circuit Court and told him that he had appointed Evans as chief deputy and asked Judge Lopp to administer to him an oath of office.[5] The respondent then summoned Evans to the courthouse where he was administered a second oath of office. Judge Lopp administered the oath, which was put into writing and signed by both Evans and Lopp in what was a public event. Neither the respondent nor Evans mentioned to the judge that Evans had previously been sworn

---

4. See footnote 3, *supra.*

5. At hearing, the respondent testified that he had nothing to do with Evans' second oath of office.

as chief deputy or that the state had been paying his salary in relation to the position for the seven months preceding. The local newspaper again interviewed the respondent following the second oath. The respondent and Evans informed the reporter that Evans had been appointed as chief deputy on August 5, 1996. Neither mentioned that Evans had actually been appointed on January 8 and that he had been on state payroll since that time. Later, in response to the Commission's investigation, the respondent attributed inaccuracies in the newspaper article to the inexperience of the reporter.

In December 1996, Evans decided to discontinue working in the Riddle Law Office and unilaterally dissolved the partnership arrangement. He gave the respondent a copy of the 1996 partnership tax return, which showed that the partnership made a profit of $540, excluding fees for title opinion work. Pursuant to the agreement, Evans was entitled to keep the net profit exclusive of title opinion fees.

Between January 8, 1996, the date that Evans took his first oath of office as chief deputy prosecuting attorney, and August 5, 1996, the date of his second oath, the respondent did not assign Evans any desk or work space in the prosecutor's office, nor did he assign him any cases, files, administrative work, court appearances, training, investigations, hearings, or any other duties relating to the prosecutor's office. At hearing, the respondent testified that Evans had done a "vast amount" of "research" for the prosecutor's office between January 8 and August 5, 1996, but could not specifically define that research or identify any cases or projects for which Evans was assigned work. Evans, meanwhile, testified that he may have been requested to look up a case or statute on one occasion for the prosecutor's office, but that he prepared no memoranda, notes, briefs, or anything remotely evidencing "vast amounts of research." Evans received from the respondent no personal instruction. He attended no continuing legal education to aid in his training as a prosecutor. The respondent

failed to assign to Evans even the most perfunctory tasks, such as initial hearings or plea hearings. Between January 8 and August 5, Evans was paid a statutory salary based on his appointment as part-time chief deputy prosecuting attorney.[6] Prior to August 5, Judge Lopp was unaware that Evans had been appointed chief deputy. Other employees of the prosecutor's office did not know prior to August 5 that Evans was the chief deputy prosecutor or could not identify any work that he might have done for the office prior to August 5, 1996. The public defender was unaware prior to August 5 that Evans was the chief deputy.

Beginning August 5, the respondent assigned to Evans the responsibility of handling all of the "Title IV-D" cases coming through the prosecutor's office. Evans also continued operating the Riddle Law Office until his resignation in December 1996.

## I. Violation of Indiana Professional Conduct Rule 8.4(b), 8.4(c)

■ Indiana Professional Conduct Rule 8.4(b) provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects. Professional Conduct Rule 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, and misrepresentation. The evidence presented at hearing clearly and convincingly demonstrates that the respondent hired Evans as chief deputy prosecuting attorney but that Evans' employment was in form only, that he provided no significant service for the Crawford County prosecutor's office between January 8 and August 5, 1996, and that his government employment was only a pretext for keeping him employed in the respondent's private law office. Evans admitted that during the seven months between January 8 and August 5, 1996, he spent less than 20 hours doing any kind of research for the prosecutor's office. Although the respondent stated that Evans did "vast amounts" of re-

---

**6.** Indiana law provides that a part-time chief deputy prosecuting attorney in Crawford County shall be paid an amount equal to 75% of the state-paid salary of a part-time prosecuting attorney. I.C. 33–14–7–5; I.C. 33–14–7–2.

search, he could not describe such research, produce legal memoranda or other documentation that such research had been done, or identify a single case or file for which Evans did the research. Other employees of the prosecutor's office could not identify specific work or duties performed by or assigned to Evans during that period. The judge of the Crawford Circuit Court testified that Evans appeared in no cases before him. The local public defender was unfamiliar with him. The respondent even admitted at hearing that Evans was "not equipped" for trial work.

The criminal act of "Ghost Employment" in this state occurs when a public servant knowingly or intentionally hires an employee for the governmental entity that he serves, and fails to assign to the employee any duties, or assigns to the employee any duties not related to the operation of the governmental entity. The offense is a class D felony. I.C. 35–44–2–4.

■ Criminal charges need not be brought and tried prior to citing of parallel allegations in a disciplinary complaint. *Matter of Cook,* 526 N.E.2d 703 (Ind.1988), *cert.denied* 493 U.S. 1023, 110 S.Ct. 727, 107 L.Ed.2d 746. Attorney disciplinary proceedings stand independent of any analogous criminal proceeding. *Matter of Behrmann,* 664 N.E.2d 730 (Ind.1996). To support a finding of violation of the *Rules of Professional Conduct,* we must find that the evidence clearly and convincingly establishes the Commission's allegations. *Matter of Oliver,* 493 N.E.2d 1237 (Ind.1986). Accordingly, this Court may find a violation of the *Rules of Professional Conduct* even where there has been no criminal charge against or criminal conviction of the respondent.

The evidence in this case clearly and convincingly demonstrates that the respondent, while elected prosecuting attorney, hired Evans to be his chief deputy prosecuting attorney but knowingly and intentionally assigned him no duties in that office. Evans then provided, under the direct supervision of the respondent, little or no services in his capacity of chief deputy prosecuting attorney for some seven months. In return for the state salary that the arrangement provided for

Evans, Evans ran the day-to-day operations of the respondent's private law office. Evans received no compensation from the respondent's private law practice for his work in the private law office, aside from a $540 net profit distributed year-end. Meanwhile, for some seven months the state of Indiana paid Evans a statutory salary, even though he did almost no work as a chief deputy prosecutor. All the while, Evans' work product at the Riddle Law Office generated a significant income for the respondent, pursuant to their agreement to split fees.

The criminal act of ghost employment involves dishonesty, fraud, and deceit because it is committed when a public servant (one necessarily invested with the public's trust) causes public resources to be used for purposes not connected with the public entity served. It is a betrayal of the public's trust. Offenses involving, *inter alia,* dishonesty or breach of trust indicate a lack of characteristics (for example, honesty, professional integrity, trustworthiness) relevant to law practice. *See Comment* to Prof.Cond.R. 8.4. As such, ghost employment, as practiced by the respondent in this case, clearly falls within the purview of Prof.Cond.R. 8.4(b). We find that by the respondent's sham employment of John Evans as chief deputy prosecuting attorney between January 8 and August 5, 1996, for the purpose of paying Evans a state-financed salary to operate the respondent's private law practice for the respondent's own profit, the respondent committed the criminal act of ghost employment. Because the respondent's actions, by their very nature, reflect adversely on his honesty, trustworthiness, and fitness as a lawyer in other respects, we find that he violated Prof. Cond.R. 8.4(b). Because his arrangement with Evans as chief deputy prosecuting attorney was for the sole purpose of funding provision of services in his private law practice, the respondent engaged in fraudulent and deceitful conduct in violation of Prof. Cond.R. 8.4(c). The respondent's perpetuation of that fraud by means of false newspaper reports and the bogus August 5 swearing-in ceremony also violated the rule.

## II. Violation of Prof.Cond.R. 8.1(a)

■ Professional Conduct Rule 8.1(a) provides that an applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not knowingly make a false statement of material fact. At hearing of these disciplinary charges, the respondent testified under oath that Evans performed vast amounts of research for the Crawford County prosecutor's office between January 8 and August 5, 1996. He was unable to support that contention with a single iota of corroborating evidence. In fact, other employees of the office testified in substance that to their knowledge Evans essentially did no work for the office during this period. Evans himself also testified to that effect. We therefore find that the respondent's contrary statements at hearing were knowingly false and, therefore, violative of Prof.Cond.R. 8.1(a). Similarly, by stating that he received no fees from the Riddle Law Office after electing full-time status as prosecuting attorney of Crawford County when he had, in fact, received almost $35,000 in net proceeds from Evans' preparation of title opinions, the respondent again violated Prof. Cond.R. 8.1(a).

## III. Violation of Prof.Cond.R. 1.5(e)

■ Professional Conduct Rule 1.5(e) provides that division of fees between lawyers who are not in the same firm may be made only if the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation, the client is advised of and does not object to the participation of all the lawyers involved, and the total fee is reasonable.

During the period when Evans operated the day-to-day functions of the Riddle Law Office, state statute precluded the respondent from practicing law due to his election to devote his full professional time to the Crawford County prosecuting attorney's office. I.C. 33–14–7–19.5. It is true that the relationship between the respondent and Evans relative to the Riddle Law Office had many characteristics of a law "firm," with either the respondent being the principle employing Evans as an associate, or with Evans and the respondent as partners. However, statute precluded such an arrangement (i.e., precluded the respondent from privately practicing law at all) as long as the respondent's election to devote his full time to the office remained in effect. Thus, for purposes of Prof.Cond.R. 1.5(e), the respondent and Evans could not be members of the same firm. Nonetheless, the respondent collected almost $35,000 in legal fees for private legal work done by Evans. There was no evidence whatsoever that the division of fees was proportionate to any work done by the respondent, as he was precluded from doing such work and therefore prohibited from agreeing with the clients to take any responsibility for pending cases. Clients were, in effect, paying the respondent for legal work that he was statutorily precluded from furnishing. Accordingly, we find that the sharing of fees between the respondent and Evans during the period when the respondent acted as full-time prosecuting attorney violated Prof. Cond.R. 1.5(e).

## IV. Violation of Prof.Cond.R. 7.2(b)

■ Pursuant to Prof.Cond.R. 7.2(b), lawyers may not practice law under a name that is misleading as to the identity, responsibility, or status of those practicing thereunder, or that is otherwise false, fraudulent, misleading, deceptive, self-laudatory or unfair within the meaning of Prof.Cond.R. 7.1, or is contrary to law. To that end, lawyers who assume judicial office may not permit their names to remain in the name of a law firm or to be used in professional notices of or public communications by the firm during any significant period in which the lawyer is not actively and regularly practicing law as a member of the firm. *Id.* After electing to devote his full professional time to the Crawford County prosecuting attorney's office, the respondent was by statute precluded from otherwise practicing law. Despite that preclusion, the moniker "Riddle Law Office" remained both on signage at the Marengo office as well as on firm letterhead and billing notifications. Actual or potential consumers of legal services could reasonably have believed that the respondent, a well-known fix-

ture of the legal community in Crawford County, would provide or assist in the provision of legal services dispensed by the office. As such, the firm name was misleading to clients as to the identity of the provider of legal services and violative of Prof.Cond.R. 7.2(b).

## V. Sanction

■ Having found misconduct, we turn to the issue of appropriate discipline. To that end, we examine the respondent's state of mind, the duty violated, actual or potential injury to the client, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and mitigating and aggravating circumstances. *Matter of Cox*, 662 N.E.2d 635 (Ind.1996). At the heart of the respondent's misconduct is his knowing and intentional creation and perpetuation of a scheme to hire a chief deputy prosecuting attorney, keep the fact of that employment a secret in the county he served as elected prosecutor, and by the arrangement fund the salary of an associate in the respondent's private law firm with the statutorily-mandated salary. In so doing, he violated the public's trust by wrongfully causing state funds to be used to support his own private enterprise, thereby deceiving county residents, officials, and the state of Indiana, and further by exploiting a public law enforcement office for his own selfish benefit. The state suffered the loss of the statutory salary so that the respondent could obtain the services of a full-time lawyer to provide legal services in his private firm, pocketing almost $35,000 as a result of that lawyer's services. As such, his crime is notorious and scandalous and one which strikes at the very heart of public trust in our institutions of government and the

legal profession. *See Matter of Gutman*, 599 N.E.2d 604, 609 (Ind.1992).

The Commission pointed out in its trial brief that the respondent not only in effect converted public funds to his own use, but also intentionally lied or misrepresented facts during hearing of this matter, most notably by testifying that Evans completed vast amounts of research during the period in question when that statement was patently untrue. The respondent continued to profess, right through the disciplinary hearing, that Evans provided service to Crawford County, even in the face of an absolute absence of evidence to support that contention. The calculated deviousness of his scheme, along with the consistent lack of veracity during hearing of the Commission's charges, casts into serious doubt the respondent's fitness to practice law as an officer of the court. In a similar vein, the Commission argues that a blatant betrayal of the public's trust by a county prosecutor, coupled with subsequent untruthfulness at disciplinary hearing, necessarily requires disbarment, not only for the immediate protection of the public from the respondent, but also to protect the public and profession generally by demonstrating that actions such as these by elected judicial officials will not be tolerated.

Misconduct generally similar to that now before the Court, where a judge was found to have "repeatedly betrayed his professional responsibilities as a judge" resulted in disbarment. *See Matter of Edwards*, 694 N.E.2d 701 (Ind.1998).[7] *See also Matter of Hughes*, 640 N.E.2d 1065 (Ind.1994) (disbarment of lawyer who, while judge of the Carmel City Court, converted county funds to his own use). We note here, that, similar to *Edwards*, the respondent has professed no remorse for his actions nor has he offered

7. In that case, a judge was found to have "use[d] his law license as a means to barter for sex," created a fraudulent court decree, lied to other judges, served as a salaried judge of two courts at the same time, and engaging in the private practice of law while serving as a full-time judge. In regard to the proper sanction for that misconduct, we stated in concluding that disbarment was appropriate:

. . . the Respondent engaged in numerous intentional acts of deceit, exploitation, and neglect. He defrauded and cheated the taxpay-

ers of this State and repeatedly betrayed his professional responsibilities both as a judge and a lawyer. Further, we find an absence of mitigating circumstances. Respondent flatly denied the charges under oath and, even in the face of overwhelming evidence of wrongdoing, has resisted accepting any responsibility for his unethical conduct. Respondent has shown no expression of remorse nor made any apology to the public or to the individual people whose trust he violated.
*Edwards*, 694 N.E.2d at 719.

any sort of restitution to the state of Indiana for his fraudulent employment of Evans.

The American Bar Association's *Standards for Imposing Lawyer Sanction* state that disbarment is appropriate where a lawyer who is in an official or governmental position and knowingly misuses the position with the intent to obtain a significant benefit or advantage for himself or another. ABA *Standards for Imposing Lawyer Sanction*, Standard 5.2. Disbarment is also appropriate where a lawyer engages in serious criminal conduct, a necessary element of which includes, *inter alia*, intentional interference with the administration of justice, false swearing, misrepresentation, fraud, or misappropriation. ABA Standard 5.11.

At hearing, the respondent presented numerous letters of colleagues, friends, and associates which indicate generally that the respondent is well thought of and that he has a good reputation for hard work, public good, and honesty. However, the letters do nothing to rebut or mitigate the specific misconduct found here.

In light of the above considerations, we find that the respondent should receive the strongest sanction available. Accordingly, the respondent, Jack R. Riddle, is hereby disbarred. The Clerk of this Court is directed to remove his name from the Roll of Attorneys.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc. R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.