**In the Matter of Dwayne M. BROWN.**

**No. 49S00–9511–DI–1268.**

Supreme Court of Indiana.

Dec. 30, 1998.

Dwayne M. Brown, pro se.

Donald R. Lundberg, Executive Secretary, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

Respondent Dwayne M. Brown served as the clerk of this state's appellate courts from 1991 until 1994. Today we find that his convictions of the crime of ghost employment arising from his actions while serving as clerk violate Rules 8.4(b) and (d) of the *Rules of Professional Conduct for Attorneys at Law* because they are criminal acts reflecting adversely on his honesty, trustworthiness, and fitness as a lawyer and because they are prejudicial to the administration of justice. We also conclude that while serving as clerk, he made unwanted and inappropriate sexual comments and advances toward female office staff in violation of Ind.Professional Conduct Rule 8.4(d).

The respondent's admission to the bar of this state in 1987 confers with us disciplinary jurisdiction in this case. As a preliminary matter, we note that this Court suspended the respondent *pendente lite* on December 13, 1995, based on his criminal convictions. Pursuant to Ind.Admission and Discipline Rule 23, this court appointed Judge William E. Davis as hearing officer in this case. Following full evidentiary hearing, he submitted to us his findings of fact and conclusions of law. The respondent petitioned this Court for review of those findings, pursuant to Admis.Disc.R. 23(15). This Court is the final arbiter of attorney misconduct in attorney discipline cases. *Matter of Blumberg*, 695 N.E.2d 114 (Ind.1998). Our review is *de novo* in nature, and in such review we examine the entire record submitted in the case. *Matter of Lobdell*, 562 N.E.2d 17 (Ind.1990).

Within this review context, we now find that during periods relevant to this action the respondent served as the elected clerk of the Indiana Supreme Court, Court of Appeals, and Tax Court. On November 3, 1995, following jury trial, the respondent was convicted of seven counts of ghost employment,[1] each a class D felony. On December

6, 1995, he was sentenced to a three year term of incarceration for each count, to be served concurrently, with the sentences suspended. He was placed on probation for two years, fined $1,000, and assessed costs. The convictions were based on the respondent's use of state-paid employees of the clerk's office for activities not related to the operation of that office.

We find that by his conduct in Count I, the respondent violated Ind.Professional Conduct Rule 8.4(b), which provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on his honesty, trustworthiness, and fitness as a lawyer in other respects. His commission of criminal acts while serving as the elected clerk of this state's appellate courts reflects adversely on the courts he served as well as the entire justice system. As such, his acts were prejudicial to the administration of justice and therefore violated Prof.Cond.R. 8.4(d).

Under Count II, we find that while serving as the clerk of the courts, the respondent employed a number of people to assist him in carrying out the office's duties. The evidence reveals that between 1991 and 1994, six female employees of the clerk's office endured unwelcome and offensive sexual advances from the respondent, including the following:

*A 22–year old female clerical employee testified that the respondent put his arm around her and kissed her on her birthday and that the respondent accused her of having a sexual relationship with another employee;

*A 23–year old female clerical employee testified that the respondent informed her that if she "kept eating," her husband would not "want to have sex with her anymore;"

*A 20–year old intern testified that the respondent, while riding with her in an elevator in the State House, kissed her on the mouth and forehead. The contact was neither invited nor welcomed by the intern. On other occasions, the respondent spoke to her about dating practices and extramarital affairs;

*A clerical employee testified that, while attending a movie with the respondent at a cinema during working hours, the respondent stared at her with his face very close to hers despite her efforts to push him away, touched her knee, and invited her to put her hands in his to "warm them up." After returning to the State House parking lot, but while still in the car, the respondent detained her to tell her about various extramarital affairs. Almost daily during her tenure with the clerk's office, the respondent commented on her feet and said he wanted to rub and kiss them. After receiving a "pay bonus" from the respondent near the end of 1993 and expressing her gratitude for the bonus, the respondent remarked that she could repay him by allowing him to rub and kiss her feet. Another time, the respondent told her that he would "forgive" her for missing work due to car problems if she would permit him to rub and kiss her feet;

*A 19–year old intern testified that the respondent asked to see her feet and said that he could guess her shoe size. Another time, the respondent told her of his desire to have sex with a prominent female public figure;

*A 21–year old employee of the office testified that the respondent sent her flowers at work. The card accompanying the flowers stated that he appreciated her so much that he wanted to get down on his knees and kiss her feet, and that he especially liked the way she looked while wearing a certain dress. Another time, the respondent questioned her about a sexual relationship between her and her former fiancé. The respondent also told her that he could guess her shoe size.

■ The evidence under Count II provides a litany of the respondent's unwanted and uninvited comments to female employees regarding intimate topics not related to the function of the office. He also made and attempted to make unwanted physical contact, including kissing and touching, with certain female employees. All of these acts occurred while he served as their employer and ultimate supervisor. Several employees testified that the unwelcome advances and comments caused them great anxiety and stress. His acts tinged the atmosphere of

the clerk's office, leading the hearing officer to conclude that the respondent "was responsible for creating and perpetuating a sexually discriminatory work environment," one that certainly was not conducive to efficient office operations. Due to the clerk's office's high public visibility (understandably so because of its intimate affiliation with the highest courts of this state), news of the respondent's office travails became common public knowledge. Where reports of inappropriate sexual advances and ghost employment stem from an elected judicial office, the general public will likely hold the judiciary in lower repute. For reasons grounded both in the resultant hampering of the office's day-to-day function and the general tarnish cast upon the judiciary, we conclude that by his actions the respondent prejudiced the administration of justice and thus violated Prof.Cond.R. 8.4(d).

In his petition for review of the hearing officer's report, the respondent essentially argues that he should not have been convicted of the crime of ghost employment because, in his estimation, his conviction marks the first time in Indiana history that "minimal misallocation" of time was considered a crime. His argument fails to recognize that attorney disciplinary proceedings stand independent of any analogous criminal proceeding. *Matter of Behrmann,* 664 N.E.2d 730 (Ind.1996). We may find a violation of the *Rules of Professional Conduct* even where there has been no criminal charge against or conviction of the respondent. *Matter of Riddle,* 700 N.E.2d 788 (Ind.1998). Nevertheless, we are wholly persuaded by the fact that the respondent was convicted of seven counts of ghost employment. The sheer number indicates wrongful action beyond mere "minimal misallocation" of time. Further, ghost employment is a crime which by its very nature involves dishonesty, fraud, and deceit and which is a betrayal of the public's trust. *Riddle,* 700 N.E.2d 788 (Ind. 1998). His actions underlying the criminal convictions and, therefore, our present finding of attorney ethical violation, were not insignificant as he would have us believe. That fact in our minds more than sufficiently answers affirmatively the dispositive issue under Count I—whether the respondent engaged in criminal acts that reflected adverse-ly on his honesty, trustworthiness, or fitness as a lawyer in other respects.

As to Count II, the respondent goes to length to persuade us that his actions did not amount to "sexual harassment" as that term is used by the EEOC. The respondent hinges his argument on a faulty premise that our findings must somehow satisfy a federal agency's definition of particular conduct relative to a civil discrimination claim. In fact, we do not need to satisfy the EEOC's or any other agency's legal definition of what constitutes "sexual harassment" to find that the respondent's creation and perpetuation of a work environment infected with inappropriate and unwelcome sexual advances violated Prof.Cond.R. 8.4(d). We need only find that the ramifications of the respondent's acts, those being a degraded work atmosphere and a negative impact on the public's perception of the judiciary, were prejudicial to the administration of justice. The evidence is clear that the respondent's actions produced a work atmosphere tainted with anxiety and stress. The evidence also reveals that some of his employees quit their jobs because of the respondent's advances. Further, reports of the allegations of misconduct in his office would tend to impact negatively the public's perception of the judiciary. As such, we find that his acts were prejudicial to the administration of justice, regardless of whether they satisfy any formal legal definition of "sexual harassment." The respondent also argues that the allegations of harassment made by his former employees are untrue. However, he did not testify at hearing of this matter and did not otherwise rebut the overwhelming evidence presented of inappropriate sexual conduct. We therefore accept the hearing officer's findings.

■ We now turn to the issue of proper sanction for the respondent's misconduct. The hearing officer recommended a suspension from the practice of law for a period of five years, allowing the respondent to petition this Court for reinstatement at the conclusion of that period. Significant in the hearing officer's assessment were several factors in mitigation. He noted that the respondent made no attempt to blame others for his actions, that he was young (28) and

inexperienced as a manager when he assumed the office of clerk, and that he returned money to the state treasury each year of his office. Although the hearing officer found that the respondent's actions were not the product of a malicious scheme to demean women while reaping financial gain from the public treasury, we would recast that conclusion to say that while the respondent did not commit professional misconduct by using public office for improper financial gain, he did knowingly demean and exploit women who worked for him while in public office. Not only did his actions injure the people victimized by his loathsome advances, but they also by association unfairly discredit the entire judicial system. As such, they deserve serious discipline.

It is, therefore, ordered that the current suspension from the practice of law of the respondent, Dwayne Brown, be continued for a period of not less than three (3) years, beginning on the date of this Order. At the conclusion of that period, he may petition this Court for readmission to the bar of this state, provided he can satisfy the conditions set forth in Admis.Disc.R. 23.

The clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc. R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the clerk.

Costs of this proceeding are assessed against respondent.