ATTORNEY FOR THE RESPONDENT
Pro se.

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
Frederick L. Rice, Staff Attorney
Indianapolis, Indiana



FILED
Jul 27 2012, 1:41 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 30S00-1101-DI-37

IN THE MATTER OF:

THOMAS E. Q. WILLIAMS,

*Respondent.*

Attorney Discipline Action
Hearing Officer Rudolph Pyle, III

**July 27, 2012**

**Per Curiam.**

We find that Respondent, Thomas E. Q. Williams, engaged in attorney misconduct by charging an unreasonable attorney fee to an elderly client, converting funds belonging to the client, and related misconduct, aggravated by his dishonesty in denying under oath that the funds he took from the client as her attorney in fact were for legal services after stating under oath in a prior civil suit that they were for attorney fees. For this misconduct, we suspend Respondent for two years without automatic reinstatement.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and on the post-hearing briefing by the parties.

Respondent's 1972 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. See IND. CONST. art. 7, § 4.

**Facts**

In 1983, M.D. sent Respondent a letter asking him to administer her estate in the event of her sickness or death. M.D. told L.N., who was her niece and closest relative, that Respondent was M.D.'s attorney. In 1984, M.D. moved to an apartment in Westminster Village, a retirement community, and executed a Power of Attorney ("POA") designating Respondent as her attorney in fact effective upon M.D.'s incompetence. In 1985, M.D. executed a Living Will prepared by Respondent.

In January of 1999, M.D. was transferred to the assisted living portion of Westminster Village. Respondent sent a letter to Westminster Village stating that he would assume certain obligations under the POA. M.D. was later transferred to the Westminster Village's nursing care facility in frail health and with failing eyesight.

On November 21, 2001, Westminster Village called L.N. and told her that that M.D.'s account was three months past due and that they could not make contact with Respondent. When L.N. was able to reach Respondent, he told her that M.D.'s money was gone. Within days, M.D. revoked Respondent's POA and executed a new POA appointing L.N. as her attorney in fact. Soon thereafter, L.N. retained counsel to obtain an accounting of M.D.'s assets from Respondent. Under Indiana law, if an accounting is requested in writing by the principal, an attorney in fact is required to deliver an accounting not later than 60 days after the request. *See* Ind. Code § 30-5-6-4. Counsel retained by L.N. sent numerous letters to Respondent asking for an accounting, but Respondent did not respond.

On October 10, 2002, L.N., on behalf of M.D., filed a complaint against Respondent seeking an accounting and a judgment for any missing or unauthorized expenditures of M.D.'s funds ("the civil suit"). Respondent resisted attempts to obtain an accounting. He filed counterclaims and cross-claims against M.D., L.N., and their counsel, for which the trial court

2

sanctioned him by ordering him to pay attorney fees. After numerous procedural hearings, the Court issued an order on June 23, 2004, directing Respondent to produce an accounting of M.D.'s assets, and Respondent filed what he termed an accounting the following month.

Respondent testified in the civil suit that he was hired "as a lawyer to be [M.D.'s] attorney in fact." He initially charged M.D. $100 per hour for his time but later raised the rate to $160 per hour on learning that a probate court approved this rate for other lawyers. He testified that he believed his services were necessary for M.D.'s legal needs and that his fees were reasonable based on the number of years he had been an attorney and the fees charged in the area. Respondent testified that he wrote checks addressed to himself or to "Cash" from M.D.'s checking account to pay himself for his services. Entries on Respondent's accounting showing payments to Respondent all bear the notation "partial atty fee" followed by a number of hours. Aside from the checks, Respondent had no written documentation to memorialize any work performed for M.D.

On May 26, 2005, the trial court issued its decision, which included the following findings of fact: (1) Respondent failed to supply an accounting as required under Indiana Code § 30-5-6-4; (2) Respondent failed to keep records of his use of M.D.'s funds and of the legal services rendered on behalf of M.D.; (3) between January 1999 and November 2001, Respondent billed M.D. for a total of 546 hours of legal services, which included an inordinate amount of unproductive and nonprofessional work and for which he paid himself fees of $93,500; (6) there was no conceivable reason for the fees charged, which consumed nearly one-third of M.D.'s modest estate of around $300,000; and (7) Respondent committed what amounted to constructive fraud upon M.D. Estimating Respondent's proper fee to be $26,208, the trial court awarded damages of $67,292 in favor of M.D. Respondent has paid this judgment, which, L.N. testified, was consumed by attorney fees and medical reimbursement obligations.

L.N. filed a grievance against Respondent with the Commission. In his response, Respondent stated that he charged "attorney fees" for "professional" services rendered as M.D.'s attorney in fact. He described M.D. as a "long time client." He stated that M.D. never objected to his "attorney fees" or the rate on which they were based.

On January 24, 2011, the Commission filed its verified complaint against Respondent. In his answer, Respondent – contrary to his position in the civil case and in his initial response to the grievance – denied that he was acting as M.D.'s attorney during the relevant period. Rather, *for the first time*, he claimed that he used M.D.'s funds "to produce for her a gospel following her near death and other writings or perhaps publishing with M.D.'s funds since these things may be something a little different from what a usual trusted friend would do with funds." In his answer, Respondent also made the following assertions:

➢ M.D. knew him primarily as a writer and as her *former* lawyer during the time period of the complaint. He made it clear to M.D. that he had left practice in the early 1990's to take up writing.
➢ M.D. voluntarily assisted him financially with books he published during this period.
➢ His activities as a writer are not governed by the Rules of Professional Conduct.

During the hearing in this disciplinary case, Respondent again maintained that the amounts he received from M.D. were for his work in writing and publishing his books, including an "American Folk Gospel" and a biography of an Indiana evangelist.

## Discussion

We reject Respondent's attempt to deny that the money he paid himself from M.D.'s funds were for attorney fees in the face of his own repeated contrary assertions in the civil suit and his response to M.D.'s grievance. We conclude that in making these payments to himself, he was charging M.D. attorney fees for purported legal services and that he is subject to the Rules of Professional Conduct and Admission and Discipline Rules.

The Commission charged Respondent with violating the following Indiana Professional Conduct Rules (as effective at the time of the alleged misconduct):

1.5(a): Charging an unreasonable fee.
1.7: Representing a client when there is a concurrent conflict of interest due to the lawyer's personal interests.
1.8(a): Entering into a business transaction with a client (unilaterally raising his fee) unless the transaction is fair and reasonable, the terms are fully disclosed in writing, the client is

4

given an opportunity to seek the advice of independent counsel, and the client consents in writing to the transaction.

1.15: Failure to render promptly a full accounting regarding a client's property upon request by the client.

8.4(b): Committing a criminal act (conversion) that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer.

We find clear and convincing evidence that Respondent violated Rules 1.5(a), 1.7, 1.8(a), and 1.15. Regarding the charge that Respondent violated Rule 8.4(b), we note that Respondent wrote checks to himself totaling approximately $100,000 from his frail and elderly client's account, consuming approximately one-third of her estate. He had no written documentation to memorialize any work performed for the client. Although he first maintained that his withdrawal of the $100,000 was for legal services performed, he changed his explanation mid-litigation to claim that they constituted her voluntary assistance to him as an author. (In this regard, he says that he left law practice in the early 1990s to take up writing.) We find Respondent's abandonment of his claim that the $100,000 was for legal services, combined with his wholly incredible claim that it was a gift, sufficiently probative of the Commission's charge that Respondent violated Rule 8.4(b) by committing a criminal act (conversion) that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer.

The Commission also charged Respondent with violating the following provisions of the Indiana Admission and Discipline Rules:

23(29)(a)(2): Failure to maintain and preserve clear record of date, amount, source, and explanation for funds held in trust.

23(29)(a)(5): Making withdrawals from a trust account without notation of the purpose and/or making withdrawals from a trust account by checks payable to "cash."

Although the recordkeeping requirements of Admission and Discipline Rule 23(29)(a) apply to "funds held in any fiduciary capacity in connection with a representation," it is unnecessary to determine whether the detailed and stringent requirements of this rule apply in this case. Rather, it is sufficient to hold that Respondent's nearly complete lack of even rudimentary records of his dealings with M.D.'s property under the POA is a fact in aggravation of his professional misconduct.

We also find the following additional facts in aggravation: (1) Respondent's groundless attacks on M.D. and others associated with her when she attempted to obtain the accounting to which she was legally entitled; (2) his dishonesty in denying under oath in this case that the funds he took from M.D. were for legal services after he repeatedly and unequivocally stated under oath in the civil suit that they were for attorney fees; and (3) his lack of remorse for any of his misconduct.

The ABA *Standards for Imposing Lawyer Sanctions*, to which we frequently look for guidance regarding appropriate discipline,[1] provide:

> Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury … to a client.

> Disbarment is generally appropriate when a lawyer, without the informed consent of client(s) … engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious … injury to the client ….

> Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer … and causes serious … injury to a client ….

ABA *Standards for Imposing Lawyer Sanctions* 4.11, 4.31(a), & 7.1. We conclude that each of these standards obtains in respect of the matter before us.

Nevertheless, we conclude that disbarment is not an effective discipline in the unique circumstances of this case. According to Respondent, he has essentially withdrawn from the practice of law since the early 1990's. Thus, from his vantage point, disbarment is a non-event—it would simply prohibit him from doing that which he has not done for nearly two decades. And because disbarment is permanent, he would have no incentive to come to grips with the pain and suffering he has wrought.

---

[1] *See, e.g.,* Matter of Riddle, 700 N.E.2d 788 (Ind. 1998) (disbarring respondent); Matter of Frosch, 643 N.E.2d 902 (Ind. 1994) (also disbarring respondent).

In lieu of disbarment, we choose to follow the hearing officer's recommendation of suspension without automatic restatement, and conclude that a minimum period of two years is warranted. Then, to regain his privilege to practice law and to reestablish his good name as an attorney, Respondent would be required to petition this Court for reinstatement, with the burden of demonstrating by clear and convincing evidence remorse for his unconscionable misconduct as well as his rehabilitation and fitness to practice law. *See* Admis. Disc. R. 23(4)(b). This could include further reimbursement of the extracted fees. Whether he would ever be able to carry this burden is a matter of speculation. However, this Court's disposition puts the onus of responsibility where it belongs – on Respondent's shoulders.

Respondent attempts to frame the issue before the Court as "whether or how severely should a Hoosier writer who is also a licensed lawyer be disciplined for accepting patronage from a client on a non-legal writing project . . . without rendering an accounting that the legal professional rules would require." He argues that the Commission is asking the Court to "condemn a writing not the writer," and refers to this proceeding as a "persecution" for being a follower of Jesus. Respondent's attempt (after his initial defense failed in the civil case and initial response to the grievance) to allege that the Commission is attacking his personal beliefs and the contents of his books is disingenuous to the extreme. They play no role the Court's conclusion that he should be disciplined for the professional misconduct described above.

## Conclusion

The Court concludes that Respondent violated the Indiana Professional Conduct Rules by charging an unreasonable attorney fee to M.D., representing her when there was a conflict of interest due to his personal interests, unilaterally raising his fee without required client safeguards, converting her assets, and failing to render a prompt and full accounting upon request. Respondent's misconduct is aggravated by his groundless attacks on M.D. and others associated with her, his dishonesty in denying under oath that the funds he took from M.D. were for attorney fees, and his lack of remorse.

7

For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than two years, without automatic reinstatement, beginning September 7, 2012. Respondent shall not undertake any new legal matters between service of this order and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(4). Reinstatement is discretionary and requires clear and convincing evidence of the attorney's remorse, rehabilitation, and fitness to practice law. *See* Admis. Disc. R. 23(4)(b).

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

The Clerk of this Court is directed to give notice of this opinion to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this opinion to the Court's website, and Thomson Reuters is directed to publish a copy of this opinion in the bound volumes of this Court's decisions.

Dickson, C.J., and Rucker and David, JJ., concur. Sullivan, J., dissents with separate opinion, with which Massa, J., concurs.

8

**Sullivan, Justice, dissenting.**

The Court says that each of three ABA Standards for Imposing Lawyer Sanctions calling for disbarment "obtains" in this case but then imposes a lesser sanction. I believe that disbarment is the appropriate sanction here and so respectfully dissent.

I concur with the Court that Respondent violated Rules 1.7 and 1.8(a) concerning lawyer-client conflicts of interests and violated Rule 8.4(b) by committing a criminal act (conversion) that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer. While the Court concludes that it should allow him the opportunity to seek to return to the practice of law, I believe Respondent has forfeited any such opportunity. After all, he wrote checks to himself totaling approximately $100,000 from his frail and elderly client's account – consuming approximately one-third of her estate – without any written documentation to memorialize any work performed for the client. And although he first maintained that his withdrawal of the $100,000 was for legal services performed, he changed his explanation mid-litigation to claim that they constituted her voluntary assistance to him as an author. I would not provide an opportunity to return to practice to a lawyer who, after helping himself to his frail and elderly client's money, says the money was a gift after his first explanation that it constituted payment for legal services was rejected by a court.

Massa, J., concurs.